UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANDREA BROWN, | CASE NO. 1:18-CV-1463 |
| Plaintiff, | |
| v. | UNITED STATES MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Andrea Brown ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") committed error that directly prejudiced Plaintiff because the ALJ failed to: (1) properly weigh the opinions of her treating psychiatric-mental health nurse practitioner and the State agency physicians; and (2) properly analyze Plaintiff's condition in light of listing 12.03. ECF Dkt. #15. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

I. **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on November 7, 2014, alleging disability beginning October 22, 2014 due to panic attacks and diabetes. ECF Dkt. #10 ("Tr.") at 112, 114, 126, 139-41, 304, 311.[2] The Social Security Administration ("SSA") denied her application at the

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript

1

initial level and upon reconsideration. *Id.* at 175, 184, 195, 200. Plaintiff requested a hearing before an ALJ, and the ALJ held a hearing on February 9, 2017, where Plaintiff was represented by counsel and testified. *Id.* at 66-67, 207, 210. A vocational expert ("VE") also testified. *Id.* at 66-67. Subsequently, the initial ALJ became unavailable and did not issue a decision, and another hearing was held with a different ALJ on October 3, 2017. ECF Dkt. #15 at 1-2; ECF Dkt. #18 at 1 n.1; Tr. at 35-36, 263. Plaintiff and a different VE testified at the subsequent hearing. Tr. at 35-36.

On February 1, 2018, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 12-28. Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council denied her request for review on March 7, 2018. *Id.* at 1-6, 302-03.

On June 28, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a merits brief on December 6, 2018 and Defendant filed a merits brief on March 25, 2019. ECF Dkt. #15; ECF Dkt. #18.

## II.     **RELEVANT PORTIONS OF ALJ'S DECISION**

On February 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 12-28. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act ("SSA") through September 30, 2016. *Id.* at 18. He further found that Plaintiff had not engaged in substantial gainful activity since October 22, 2014, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the severe impairments of coronary artery disease, status post stent placement, hypertension, diabetes mellitus, obesity, affective disorder, and anxiety disorder. *Id.* He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: limited to climbing ramps and stairs frequently and never climbing ladders, ropes, or scaffolds; must avoid concentrated exposure to extremes of cold and heat; must avoid all exposure to hazards, such as industrial machinery and unprotected heights; has the capacity

---

correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

to sustain concentration and persistence to complete simple tasks in an environment that does not require rapid pace, to relate adequately on a superficial and occasional basis, and to perform work in a setting without close over the shoulder supervision. *Id.* at 20.

The ALJ then stated that Plaintiff is unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had a limited education, and could communicate in English. *Id.* at 27. Next, the ALJ indicated that the transferability of jobs skill was not material to the determination of disability because her past relevant work was unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the SSA, from October 22, 2014 through the date of his decision. *Id.* at 28.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. LAW AND ANALYSIS

### A. OPINION EVIDENCE

#### 1. Psychiatric-Mental Health Nurse Practitioner Shalina Terry

Plaintiff first asserts that the ALJ should have afforded Psychiatric-Mental Health Nurse Practitioner Shalina Terry's opinion controlling weight. ECF Dkt. #15 at 15-20. Specifically, Plaintiff reasons that (1) the ALJ ignored 20 C.F.R. § 416.927(f)[3]; (2) the factors under § 416.927(c) support a finding of disability; (3) the ALJ should have reviewed Ms. Terry's opinion in light of the entity treatment model; (4) checking boxes was not a limited response; and (5) her two reports are not inconsistent with each other. *Id.* For the following reasons, the Court finds that the ALJ did not err in affording "partial weight" to Ms. Terry's opinion and substantial evidence supports that determination.

Plaintiff's first reason is without merit. 20 C.F.R. § 416.927(f) governs opinions from medical sources who are not acceptable medical sources and from nonmedical sources, which encompasses nurse practitioners[4]. 20 C.F.R. § 416.913(a) & (d)(1) (effective Sept. 3, 2013); *e.g.*, *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 397-98 (6th Cir. 2014) (noting that nurse practitioners are not acceptable medical sources). An ALJ generally should explain the weight given to opinions from medical sources who are not acceptable medical sources, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of a case." Social Security Ruling ("SSR") 06-03p[5], at *6. The Sixth Circuit interpreted this ruling to mean that an ALJ should discuss the 20 C.F.R. § 416.927(c) factors relating to treatment,

---

[3] 20 C.F.R. § 416.927 governs SSI determinations, while 20 C.F.R. § 404.1527 governs DIB determinations. These regulations are virtually identical, and, for convenience, the Court will only cite to the SSI regulations, as Plaintiff has done.

[4] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

[5] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

5

in order to provide a basis for why the ALJ was rejecting the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) ("The factors set forth in 20 C.F.R. § 404.1527, which under the regulation apply only to medical opinions from acceptable medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'") (citing SSR 06-3p). However, an ALJ does not need to provide "good reasons" for rejecting the opinions of nonacceptable medical sources, including nurse practitioners. *See* 20 C.F.R. § 416.927(c)(2) ("good reasons" are only required when an ALJ provides less than controlling weight to a treating source's medical opinion); *Handzel v. Comm'r of Soc. Sec.*, No. 1:13-CV-01779, 2014 WL 2611858, at *4-5 (N.D. Ohio June 11, 2014) (noting that ALJs are not required to give "good reasons" for rejecting the opinions of nurse practitioners because they are not acceptable medical sources under the regulations); *Leach v. Comm'r of Soc. Sec.*, No. 3:13 CV 2037, 2015 WL 1221925, at *3 (N.D. Ohio Mar. 17, 2015) ("[T]he regulations do not require the same heightened 'good reasons' analysis that applies to the opinions of acceptable medical sources.").

The ALJ in the instant case considered Ms. Terry's opinion and discussed several of the § 416.927(c) factors. *See* tr. at 25-26. First, the ALJ discussed the examining and length of treatment relationship, noting that the treatment relationship began "around the summer of 2016, which gives [Ms. Terry] a fair amount of insight into the claimant's condition." *Id.* at 25 (citing tr. at 893-94). Regarding the factor of supportability, the ALJ noted that Ms. Terry "provided her opinions on questionnaires with limited response choices," and she "did not support her opinions with objective findings, only listing diagnoses to support such debilitating limitations." *Id.* The ALJ also addressed the consistency factor, stating that:

> Ms. Terry provided no explanation for the apparent differences in her statements in the 2 opinions, such as finding that the claimant cannot interact with supervisors, relate to co-workers, or deal with the public for any appreciable amount of time in Exhibit 17F, but then later finding in Exhibit 23F that the claimant only has "moderate" difficulty cooperating with others. These opinions are not fully consistent with the record, including clinical evidence showing that the claimant was alert and oriented with coherent thoughts, clear speech, normal behavior, intact concentration, and intact memory.

*Id.* at 25-26.(citing tr. at 757-68, 831-32, 901). After acknowledging that Ms. Terry was not an acceptable medical source, the ALJ adhered to 20 C.F.R. § 416.927(f) by considering her opinion in light of the factors listed in paragraph (c) of that section. Also, not every factor will apply in every case. 20 C.F.R. § 416.927(f)(1).

Plaintiff further contends that the factors support a finding of disability. ECF Dkt. #15 at 16-17. She states that the treatment relationship endured from or around December 5, 2015 at MetroHealth Hospital until at least January of 2017. *Id.* at 17 (citing tr. at 885, 975). The ALJ noted the relationship as beginning in the summer of 2016 because, in her January 2017 statement, Ms. Terry stated that Plaintiff had been under her care for about 6 months. Tr. at 25, 894. Regardless, the ALJ weighed the length of the treatment relationship in Plaintiff's favor, noting that Ms. Terry had a "fair amount of insight into the claimant's condition." *Id.* at 25. To support the consistency factor, Plaintiff points to multiple reports from Ms. Terry, noting Plaintiff as being irritable, having hallucinations, and being evasive, among other similar traits. ECF Dkt. #15 at 17 (citing tr. at 889, 978, 990, 1002, 1014, 1025, 1035-36). She also noted consistency with reports of similar observations from Drs. Schweid, Barr, and Gambrill during the same period. *Id.* (citing tr. at 828, 831, 966). While acknowledging that there are some consistent records, the Court finds that the ALJ adequately supported her assessment of the consistency factor with substantial evidence, especially given that the ALJ did afford partial weight to this opinion. The ALJ compared Ms. Terry's January 2017 and September 2017 opinions, giving an example of a difference, which will be described more in depth later in this opinion. Tr. at 25. Also, the ALJ acknowledged how Ms. Terry's opinions were not consistent with other evidence in the record, which showed coherent thoughts, clear speech, normal behavior, intact concentration, and intact memory. *Id.* at 25-26 (citing tr. at 757-68, 831-32, 901).

Plaintiff's next contention is that the ALJ should have reviewed Ms. Terry's opinion in light of the entity treatment model, citing *Pater v. Comm'r of Soc. Sec.*, No. 1:15CV1295, 2016 WL 3477220 (N.D. Ohio June 27, 2016). ECF Dkt. #15 at 18. The *Pater* court recognized the reality that a treating physician may be just one member "of a team of professionals that interact with the patient," and that "[m]any patients now view his or her treating source as an entity rather than as any

one individual." *Pater*, 2016 WL 3477220, at *6. However, the court also recognized that this model does not "fit neatly" with the regulations' assumption of a "single treating physician interacting one-to-one over a period of time with a single patient." *Id.* It further stated that "the cornerstone reason for according treating source opinions a special status is the presumed benefit flowing from the lengthy familiarity of the treating source with the patient, as shown by multiple direct contacts between the patient and the physician." *Id.* To note, neither of the Medical Source Statements of Ms. Terry have an accompanying signature to signal any type of adoption or affirmation by a physician or any other hospital employee. Tr. at 893-94, 1083-84. With that, this Court rejects Plaintiff's contention that Ms. Terry's treatment relationship should be expanded to encompass her visits to other providers within the same hospital system as it does not follow the logic of the treating source rule.

Furthermore, Plaintiff avers that Ms. Terry's opinion marked on medical source statement forms were not "limited response choices." ECF Dkt. #15 at 19. The Sixth Circuit has explained that an ALJ may properly discount a treating physician's opinion when the opinion is in the format of a conclusory checkbox questionnaire. *Ellars v. Comm'r of Soc. Sec.*, 647 Fed.Appx. 563, 566 (6th Cir. 2016) (finding that ALJ may properly afford little weight to treating physician's two-page check-off form that did not cite to objective medical evidence); *Serrano v. Berryhill*, No. 1:17CV2644, 2019 WL 691311, *23-24 (N.D. Ohio Jan. 30, 2019) (Limbert, J.), report and recommendation adopted *Serrano v. Comm'r of Soc. Sec.*, No. 1:17CV2644, 2019 WL 669634 (N.D. Ohio Feb. 19, 2019) (finding the same). Additionally, ALJ's are not bound by "conclusory statements of physicians, particularly where the statements are unsupported by detailed objective criteria and documentation in the medical record, and are inconsistent with the rest of the evidence." *Ellars*, 647 Fed.Appx. at 565-66 (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). On January 14, 2017 and September 23, 2017, Ms. Terry made check marks on Medical Source Statement forms about Plaintiff's mental capacity, both of which were two pages in length. Tr. at 893-94, 1083-84. The ALJ found these opinions to be limited in scope and without the support of objective findings. *Id.* at 25. While the forms do include a short list of Plaintiff's diagnoses, nowhere on the questionnaire does Ms. Terry explain how the diagnoses result in the limitations contained

8

in the opinion. *Id.* at 893-94, 1083-84. For example, in her January 2017 opinion, Ms. Terry checked "rare" and "occasional," indicating a high degree of limitation, in seventeen of the twenty two categories considered on the questionnaire. *Id.* at 893-94. In her September 2017 opinion, Ms. Terry checked "marked" limitation in ten of the thirty-two categories on the form. *Id.* at 1083-84. Nowhere in these opinions does Ms. Terry explain why Plaintiff's mental impairments constitute such extreme limitations and no medical testing or observations are cited. *Id.* at 893-94, 1083-84. Therefore, the ALJ properly afforded partial weight to Ms. Terry's opinion due to her "limited response choices."

Plaintiff further contends that the ALJ improperly found that Ms. Terry's opinions were inconsistent with each other. ECF Dkt. #15 at 19-20. The ALJ stated that Ms. Terry's opinions, issued about eight months apart, were inconsistent with each other, and she gave a specific example that Ms. Terry first opined that Plaintiff "cannot interact with supervisors, relate to co-workers or deal with the public for any appreciable amount of time," but then later opined that Plaintiff "only has 'moderate' difficulty cooperating with others." Tr. at 25 (citing tr. at 893-94, 1083-84). Plaintiff asserts that no inconsistencies exist because the second report notes that Plaintiff has:

> 'marked' limitations in asking for help when needed, handling conflicts with others, responding to requests, suggestions, criticism, correction and challenges, and in keeping social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness, with 'marked' being defined, consistent with 12.00(F)(2)(d), as functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

ECF Dkt. #15 at 20 (citing tr. at 1083-84). The Sixth Circuit has held valid an ALJ's rejection of a treating source's opinion when unexplained inconsistencies exist between multiple opinions by that same treating source. *See, e.g.*, *Payne v. Comm'r of Soc. Sec.*, 402 Fed.Appx. 109, 116 (6th Cir. 2010) ("[Plaintiff] ignores the apparent inconsistency between [treating physician's] 2003 and 2005 opinions, makes no attempt to explain it, and offered no evidence of changes in her condition that might have justified [treating physician's] later opinion."); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 156 (6th Cir. 2009) ("[Plaintiff] presented no other objective medical evidence to explain how or why, in [treating physician's] opinion, [Plaintiff] was not a candidate for disability in July 2003, but degenerated to the point of being unable to perform sedentary work by August 2006."); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988) (holding that ALJ's rejection of treating

9

physician's opinion that the claimant lacked the capacity to perform light or sedentary work was supported by substantial evidence where the opinion was "inconsistent" with the treating physician's earlier evaluation, there were "no significant or specific changes in [the claimant's] overall condition between the dates of the [treating physician's] reports [,]" and a consulting examiner disagreed with the treating physician); *see also Wheeler v. Colvin*, No. 1:15-CV-01540, 2016 WL 1599961, at *10 (N.D. Ohio Apr. 21, 2016) (upholding ALJ's rejection of treating source's opinions due to "unexplained inconsistencies between the two opinions" rendered 5 months apart).

Therefore, the main issue in this contention is whether any inconsistency actually exists. The medical source statement forms are slightly different from each other in that limitations are defined using different terminology: the January 2017 form used the terms "constant," "frequent," "occasional," and "rare," while the September 2017 form used the terms "none," "mild," "moderate," "marked," and "extreme." *See* tr. at 893-84, 1083-84. The forms also differ in the categories of listed activities. *Id.* Although there appears to be some consistencies in the forms, there are also inconsistencies. For example, in January 2017, Ms. Terry opined that Plaintiff cannot work in coordination with or in proximity to others without being distracted and without being distracting for any appreciable time. *Id.* at 893 (marked as "rare"). However, in September 2017, Ms. Terry opined that Plaintiff only has "mild" limitation in working close to or with others without interrupting or distracting them. *Id.* at 1084 ("mild" being defined as "Patient's functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."). Another example is in January 2017, Ms. Terry marked Plaintiff as being able to maintain appearance occasionally, which is defined as the ability to do the activity for up to 1/3 of a work day. *Id.* at 893-94. But in September 2017, she marked Plaintiff as having no limitation in maintaining personal hygiene and attire appropriate to a work setting. *Id.* at 1084. The Court acknowledges the vagueness and differences in the forms as well as some apparent consistent statements, but there are enough discrepancies to support the ALJ's finding of inconsistencies, especially given the fact that the ALJ did not completely discount Ms. Terry's opinion, but rather afforded it partial weight.

The Court finds that the ALJ had substantial evidence for affording partial weight to Ms. Terry's opinions, particularly in light of the fact that she is not an acceptable medical source. The

10

ALJ sufficiently considered the factors for determining the weight to give the opinion and appropriately explained her reasons for doing so.

### 2. State Agency Physicians

Plaintiff further contends that the ALJ erred in giving great weigh to the opinions of the state agency consultants, Drs. Richardson and Souder, because they did not treat nor examine Plaintiff and because their opinions were "untimely" as they were given 32 and 36 months prior to the hearing. ECF Dkt. #15 at 20-22. Plaintiff notes that the state agency reviewers last looked at evidence of record in February and June of 2015 and that it was error for the ALJ to rely on these reports in any way because there was evidence that post-dated these opinions. ECF Dkt. #15 at 18, 21-22. In particular, Plaintiff argues that the State agency opinions are inconsistent with the opinions of Ms. Terry and both VEs, who relied on Ms. Terry's limitations. *Id.* at 22.

The regulations state that an ALJ is not bound by any findings made by State agency consultants, but ALJs are still required to consider all medical opinions in the record, including from State agency consultants. 20 C.F.R. § 416.927(c) & (e)(2)(i); *see also* 20 C.F.R. § 416.913a(b) (updated version of § 416.927(e), saying the same); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 Fed.Appx. 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'") (citing SSR 96-6p). ALJs "may not ignore the opinions of State agency consultants" because they are highly qualified experts in the evaluation of medical issues in SSA disability claims. SSR 96-6p, at *2. The ALJ must evaluate the State agency findings using the factors in § 416.927(a) through (d) and must explain the weight given to these opinions, unless a treating source's opinion is given controlling weight. 20 C.F.R. § 416.927(e)(2)(ii). In appropriate circumstances, the opinions of State agency consultants "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, at *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). However, when there is substantial evidence post-dating a State agency consultant's opinion, the Sixth Circuit "require[s] some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 409 (6th Cir. 2009) (citing *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007) and SSR 96–6p, 1996 WL 374180, at *3); *see also Miller*, 811 F.3d at 834. If an ALJ's decision includes a discussion of medical opinions or other evidence post-dating the State agency opinions, courts will generally find no error as the ALJ adequately reviewed the complete case record. *See Minyard v. Berryhill*, No. 5:17CV2261, 2019 WL 1099552, at *5 (N.D. Ohio Mar. 8, 2019) (Limbert, J.); *Kelly v. Comm'r of Soc. Sec.*, 314 Fed.Appx. 827, 831 (6th Cir. 2009) (finding no error when new evidence is submitted after agency expert opinions that does not "render the prior opinion untenable," or "fatally undermine the accuracy of that assessment."); *Maust v. Colvin*, No. 5:13-CV-02353, 2014 WL 4852064, at *7 (N.D. Ohio Sept. 29, 2014) (rejecting plaintiff's unsupported argument that ALJ erred in crediting State agency opinions when plaintiff failed "to explain how these recent records are inconsistent with the State Agency's consultants' opinions).

Plaintiff's timeliness argument in the instant case is without merit, as the ALJ is required to consider State agency opinions regardless of timing. In the instant case, Plaintiff has not argued that the adequacy of the ALJ's explanation of the weight given to the State agency consultants was improper. The Court finds that the ALJ appropriately followed the regulations' requirements and considered the appropriate factors, particularly specialization and consistency.

Plaintiff's remaining contention that there was contradictory evidence that post-dated the State agency opinions is also without merit. ECF Dkt. #15 at 22. For support, Plaintiff points to both of the VEs' testimonies who testified that Plaintiff would be unemployable based on a hypothetical question roughly based on some of Ms. Terry's opinions. *Id.*; *see* tr. at 62-63, 107-09. However, the ALJ only appeared to rely on the testimony of the VE present at her own hearing held on October 3, 2017. *See* tr. at 27-28. Based on the ALJ's first hypothetical, the VE testified that there were several jobs in the national economy that Plaintiff could perform. Tr. at 27-28, 61-62. The ALJ did not discount the second VE's opinion, but rather did not rely on the second hypothetical question posed by Plaintiff's counsel, which was based on the opinion of Ms. Terry, whose opinion the ALJ only afforded partial weight. *Id.*

In addition, State agency consultants, Drs. Richardson and Souder, gave their opinions on February 7, 2015 and June 6, 2015, respectively. Tr. at 119, 124, 149, 154. Yet, the ALJ's discussion

12

of these opinions has support from records post-dating these opinions, the latest being from August 2016. *Id.* at 25 (citing to tr. at 757-68, 831-32, 901, 957). The ALJ's decision includes a discussion of evidence post-dating the opinions of Drs. Richardson and Souder, and consequently, the Court finds that the ALJ's decision reflects that she sufficiently considered the opinions of the State agency consultants and adequately explained the reasons for the weight that she gave to those opinions. Further, the ALJ adequately considered Plaintiff's record as a whole and substantial evidence supports her determination.

### B. LISTING 12.03

Finally, Plaintiff asserts that the ALJ erred at Step Three in failing to perform an analysis of the Plaintiff's conditions in light of Listing 12.03, which evaluates schizophrenia spectrum and other psychotic disorders. ECF Dkt. #15 at 22-23; 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A)(1). Plaintiff points out that she was diagnosed with major depressive disorder with psychotic features. ECF Dkt. #15 at 22 (citing tr. at 1084). Notably, at Step Two, the ALJ did not include this as one of Plaintiff's severe impairments. Tr. at 18. The only severe mental impairments the ALJ found at Step Two were affective disorder and anxiety disorder. *Id.*

At Step Three, the claimant has the burden of proving that she has an impairment or combination of impairments that meet or medically equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Lusk v. Comm'r of Soc. Sec.*, 106 Fed.Appx. 405, 411 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). If the claimant meets or medically equals a listed impairment, she is conclusively presumed disabled. If she does not, the evaluation proceeds to the fourth step. 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e). "If ... the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing." *Sheeks v. Comm'r of SSA*, 544 Fed.Appx. 639, 641 (6th Cir. 2013) (quotation and alterations omitted); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 415-416 (6th Cir. 2011). However, "the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks*, 544 Fed.Appx. at 641; *see also Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (stating that, when an ALJ

"did not explicitly state that the appellant's impairments were not contained in the listings, such a determination was implicit in the ALJ's decision" because he proceeded to Step Four).

In her decision, the ALJ at Step Three specifically addressed Listing 12.04 for evaluating depressive, bipolar and related disorders and Listing 12.06 for evaluating anxiety and obsessive-compulsive disorders. Tr. at 19-20. Listings 12.03, 12.04, 12.06 have three paragraphs, A, B, and C, a variation which must be satisfied in order to meet the severity of each Listing. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A)(2). A claimant must show that she meets the severity of one of these specified listings by showing that she meets both of the impairment-specific medical criteria in paragraph A and the functional limitations criteria in paragraph B, or both the criteria in paragraph A and paragraph C. *Id.* The common functional limitations criteria in paragraph B of Listings 12.03, 12.04, and 12.06 require that Plaintiff show that her impairment(s) resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself." 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.03(B), 12.04(B), 12.06(B).

In reviewing specific mental impairment listings, the ALJ identified those listings and outlined the "B" criteria for meeting or medically equaling these listings, which consists of the four aforementioned areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Tr. at 19-20. The ALJ explained that in order to satisfy one of these listings, Plaintiff would have to have an extreme limitation in one of the "B" criteria or two marked limitations of the four "B" criteria. *Id.* She determined that Plaintiff had mild limitations in the two areas: understanding, remembering, or applying information and adapting or managing oneself. *Id.* She also determined that Plaintiff had moderate limitations in the other two areas: interacting with others and concentrating, persisting or maintaining pace. *Id.*

Plaintiff contends that the ALJ erred in Step Three because she failed to address Listing 12.03 and, as such, it is impossible to evaluate her basis for finding that Plaintiff was not disabled and did not meet the criteria for this listing. ECF Dkt. #15 at 23. Plaintiff notes that there is evidence

that she sometimes experienced hallucinations and was paranoid and that the ALJ did not evaluate these symptoms at all in light of Listing 12.03. *Id.* Although, the ALJ did not expressly mention Listing 12.03, she did discuss the Paragraph (B) and (C) criteria of listings 12.04 and 12.06, which are identical to Listing 12.03. The ALJ also discussed her relevant symptoms. Tr. at 19-20. In the area of "concentrating, persisting, or maintaining pace," the ALJ found moderate limitation. *Id.* at 19. She noted that Plaintiff alleged trouble maintaining focus and having hallucinations. *Id.* The ALJ further cited to the medical records, the first of which was a July 2016 record finding that she had impaired cognition in the context of hallucinations. *Id.* (citing tr. at 961-62). The ALJ further noted that a subsequent record revealed that she was non-compliant with her medication during the July 2016 episode of hallucinations and that the record does not show regular problems with hallucinations when she is compliant with her medication. *Id.* (citing tr. at 746-47, 761, 830, 966). Also, the ALJ noted that treatment records reveal Plaintiff was alert and oriented with coherent thoughts and intact concentration. *Id.* (citing tr. at 746-47, 793, 798, 831-32). Finally, the ALJ pointed out that Plaintiff acknowledged reading, completing crossword/word puzzles, cooking 6 times per week, doing "everything" for her children, managing money, and indicating that she can concentrate. *Id.* at 365-72, 449, 759). Further, in her RFC determination, the ALJ discussed in depth Plaintiff's reported mental dysfunction, with specific mention of her hallucinations and paranoia, among other symptoms. Tr. at 21-23; *see generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination). The ALJ again specifically noted Plaintiff's noncompliance with taking her medications and that Plaintiff acknowledged improvement in her paranoid delusions and hallucinations when she was compliant with taking her medications. Tr. at 21-23. The ALJ stated that the evidence of significant non-compliance did not lend support to Plaintiff's allegations. *Id.* at 22. As such, the ALJ concluded that "outside instances of medication non-compliance, the record does not show regular problems with hallucinations." *Id.* at 23. Since the ALJ discredited Plaintiff's symptoms of paranoia and hallucinations with substantial evidence, the ALJ was not required to

discuss Listing 12.03. *See Sheeks*, 544 Fed.Appx. at 641. In addition, any error in this regard would be harmless because the ALJ discussed listings 12.04 and 12.06, which include the same requirements as Listing 12.03, and the ALJ discussed her relevant symptoms within her Paragraph (B) analysis.

For the above reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's symptoms and resulting limitations. The Court further finds that the ALJ set forth sufficient reasons for the determinations that she made and substantial evidence supports those determinations.

## VI. CONCLUSION

For the above reasons, the Court orders that the decision of the ALJ is hereby AFFIRMED and Plaintiff's complaint is hereby DISMISSED in its entirety WITH PREJUDICE.

Date: August 27, 2019  /s/George J. Limbert
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE